## McKENNA *v.* BOLGER.

(*Supreme Court, General Term, First Department.* June 19, 1888.)

1. PARTNERSHIP—PURCHASE BY ONE PARTNER OF ANOTHER'S INTEREST—ACTION FOR PRICE—COUNTER-CLAIM OF EXPENSES BEFORE SALE.

    Plaintiff's intestate, defendant, and another person were engaged in farming in partnership. Deceased agreed to sell his interest for a certain sum to defendant. Afterwards, as a further consideration, and in order to deprive the other partner of his interest, it was agreed that defendant should obtain title by the foreclosure of a mortgage, the deceased agreeing not to bid against defendant at the sale. This arrangement was carried out. *Held,* in an action for the price of the partnership interest, that defendant could not set up, as a counter-claim, his expenditures made in the partnership business prior to the purchase of the deceased's interest.

2. MORTGAGE—FORECLOSURE—PARTIES.

    Nor could he plead as a defense that the third partner was not a party to the foreclosure proceedings, as he was not named as a grantee in the deed by which they held, and as the deceased only agreed to sell his interest, and not that of his partner.

3. FRAUDS, STATUTE OF—CONTRACTS RELATING TO SALE OF LAND—EXECUTED.

    Nor could he interpose the defense that the contract to purchase, not being in writing, was within the statute of frauds, as the agreement had been carried out and he had the property.

4. WITNESS—COMPETENCY—TRANSACTION WITH DECEASED PERSON.

    Evidence of defendant that he contributed more than his share in the expenses of managing the farm is inadmissible, because it involves a transaction with a deceased person; and, for the same reason, evidence of what deceased said at the time a declaration of trust was made in favor of the other partner is also inadmissible.

5. SAME—EXTRINSIC MATTERS.

    A witness for plaintiff, an administrator, testified that he was present when the contract was made; that defendant then agreed to pay the deceased a certain sum for his one-third interest in a farm owned by them. Defendant, as a witness, was asked if he promised deceased, in presence of this witness, at that time, to pay

the sum stated for deceased's one-third interest.  *Held*, that the answer was properly excluded, as it related to a transaction with a deceased person, and not to extrinsic matters.

Appeal from circuit court, New York county; RUFUS W. PECKHAM, Justice.

This is an appeal by defendant, Thomas Bolger, from a judgment entered on a verdict of a jury, and from an order denying a motion to set aside the verdict, and for a new trial.  John P. O'Neil, the original plaintiff, commenced this action March 10, 1882, for $1,666, and interest from October 13, 1877.  He afterwards died, and Mary L. McKenna was substituted as temporary administratrix of the estate.  The defendant answered, pleading a counter-claim, which on trial the court ruled out, under the statute of limitations, and a judgment was rendered for plaintiff.  Defendant appealed to the general term, which ordered a new trial on the ground of error in excluding testimony.  *McKenna* v. *Bolger*, 37 Hun, 526.  The new trial again resulted in a verdict and judgment for plaintiff.  On trial, a witness, Tobias, testified that he was present when the contract sued on was entered into between deceased and defendant; that defendant then agreed to pay deceased $1,666 for his one-third interest in a farm owned by them.

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*John T. Fenlon*, for appellant.   *M. J. McKenna*, for respondent.

BRADY, J.  This action was commenced for the purpose of compelling the payment of $1,666, with interest from the 13th of October, 1877.  The claim arose in this way:  The plaintiff's intestate, John P. O'Neil, one McCandless, and the defendant were interested in the Mount Kisco farm, a piece of property in Westchester county, in this state, in the management of which large sums of money had been expended on joint account, and without success in a pecuniary sense.  The defendant had made most of these expenditures, it would seem from the evidence; and the intestate, who declared himself unable to bear the burden longer, offered to sell his interest to the defendant for the sum already named, and the offer was accepted.  It was much less, it may be observed, in amount than the interest had actually cost him, said to be about one-half.  After this compact had been made, it was the result of a further consideration of the subject that the defendant could be made more secure in his acquisition by a foreclosure, the details of which were agreed upon, including the promise of the intestate that he would not bid against the defendant upon the sale under the foreclosure, or do anything to militate against the defendant's investment with the whole title.  This scheme was in part devised, if not wholly, to divest McCandless of his interest, and thus increase the value of the defendant's holding.  The foreclosure was commenced and carried out to the letter, the intestate not doing aught against it, and the defendant becoming the purchaser, and for the exact amount or nearly so covering the incumbrances and charges.  The defendant, though possessing himself thus of the title to the farm, and having conspired, if there was any wrong-doing against McCandless; with the intestate to accomplish it, when sued for the consideration of the contract, urged as affirmative defenses a counter-claim, consisting of the expenditures he had made; the omission to make McCandless a party to the foreclosure proceedings; and the statute of frauds, inasmuch as the agreement between him and the intestate, assuming one to have been made, was not in writing.  And on the argument of this appeal insisted, in addition to this array, that the evidence was not sufficient to warrant the verdict rendered.  The merits are decidedly in favor of the plaintiff, for the reason that the jury on evidence sufficient, nay abundant, and which was not overcome by superior proof, found for her.  It is not considered necessary to resort to details to show this.  Indeed, it is sufficient to make a general statement of the attitudes of the defense assumed by the de-

fendant, to warrant the conclusion that the jury were right in their convictions, but the details of the evidence examined and considered make assurance doubly sure. The verdict should not, therefore, be disturbed on the ground that it is contrary to the weight of evidence.

There does not seem to be any merit in the counter-claim set up. It is true it was substantially ruled out on the ground that the statute of limitations had run against and destroyed it; but the agreement itself, made by the defendant, absorbed it, assuming it to have existed. The defendant purchased the interest of the intestate in the farm, and that interest was its value; all liens and charges against it being considered. The defendant knew what charges he had, if any; and, when the contract was made, the price was named and accepted, with full knowledge of all the circumstances affecting the interest. The defendant may have erred in making the contract,—a circumstance common and distinguishing; but with that we have nothing to do. He agreed to pay that sum for the interest, and doubtless did so, for the reason that it was so much less than it had cost the intestate. There can be no doubt of the effect of the agreement as thus stated. *Morss* v. *Gleason*, 64 N. Y. 204. It is true that the case cited was one where a partnership existed, but the principle is the same where there are joint owners and joint expenditures by agreement therefor, and each is bound to contribute his proportion to his individual interest.

The statute of frauds has no application to a case of this kind. If the agreement were merely inchoate, it would be otherwise; but here it was fully carried out, and the defendant availed himself of all its provisions. It was fully executed, and it would be grossly unjust to permit a party to invoke the provisions of the statute under such circumstances. This is not an action to enforce an unexecuted agreement, but to recover the consideration for one performed. This puts it beyond the pale of the statute. *This Case*, 37 Hun, 526; Bish. Cont. § 634. But it must be further said that the transaction was simply another mode of transferring O'Neil's interest to the defendant. *This Case*, 17 Wkly. Dig. 431.

The defense as to McCandless is not meritorious or available. Aside from the connection of the defendant with the scheme already mentioned, the fact was that both parties considered him derelict in the payment of his portion of the expense account, and, as he was not named as one of the grantees, he was not a party on record. If he had any rights, therefore, it was his concern, and not the defendants. It would seem, however, that he had none which were available; for it appears that he commenced an action against the defendant and the intestate after the foreclosure and purchase under it, and that it fell through for want of prosecution. If, however, any interest remained, the defendant took subject to it,—took all the chances of the regularity of the foreclosure proceedings. The intestate did not undertake to sell the interest of McCandless, but his own; and the subsequent arrangement was for the defendant's benefit, and, as we have seen, expressly agreed upon. McCandless not appearing upon the record, his relations were with the grantees, his associates, and he was at their mercy; having only a right of action against them for any sale of the property, unless notice was given to their vendee before a sale. It thus appears that upon the defenses interposed the defendant has no standing, and that, unless some one of the exceptions taken during the trial is fatal, the defendant is remediless.

On the former argument the exception considered and declared to be well taken was that relating to the question put to the defendant in regard to the evidence of the witness Tobias, who had testified that he was present when the agreement to purchase was made or accepted, or both, and sought to contradict him in that respect. It was as follows: "Did you promise Mr. O'Neil, in the presence of Mr. Tobias, at that time, that you would give him, O'Neil, $1,666 for his one-third interest?" It had been previously decided, substan-

tially on principle, in accordance with the rule of the adjudged cases as construed, that such a question was proper. It was regarded as an extrinsic fact, not involving a transaction with the deceased, but solely as a contradiction of the witness, and therefore admissible, (see *This Case*, 37 Hun, *supra:*) and hence the opinion heretofore delivered. A close examination of the cases, however, has resulted in the conviction that, when the court of last resort declared extrinsic facts to be admissible, it meant only a certain class of facts limited and restricted. For example, the defendant might testify that he was not present at the time and place mentioned by the witness when the alleged conversation took place, or the contract was said to have been made. Such a question would not involve a personal transaction with the deceased, but a conflict between the witness and the defendant. The court put it thus in a kindred case: "We think that Mr. Orth, for instance, was competent to testify that he was not in the city of New York at the time referred to by the witness, or that the witness was at some other place, or that he never met the witness at the office where the conversations are alleged to have occurred; and, on the same principle, we see no reason why he should not have been allowed to testify that the witness was never present at the office when any conversation took place between Mr. Orth and the deceased, so long as he refrained from testifying as to anything that was or was not said between him and the deceased." *Pinney* v. *Orth*, 88 N. Y. 452. Here, however, the question is much broader, for the reason that it embraces more than the fact suggested. It is whether the defendant promised, in the presence of Mr. Tobias, at the time mentioned, that he would give the deceased $1,666 for his one-third interest. This was asking as to something that was or was not said between him and the deceased, and comes directly within the prohibition stated. See, also, *Lewis* v. *Merritt*, 98 N. Y. 206. The contradiction of the witness herein would seem, at first blush, to be within the rule laid down; but its analysis demonstrates the error of this view. If the question relates directly to and embraces *in hæc verba* what was said, it must be rejected; while all negations, tending to show that the evidence sought to be overcome must be false, may be used. Such, for example, as that no such conversation as stated occurred, or that the witness was not present at any conversation between the parties on the subject-matter of the action. In other words, while you may permit a negation which tends to contradict the testimony, even although it also tends to negative a personal transaction with the deceased, you cannot embrace in the question any statement of the subject-matter. The conversation may be referred to for the purpose of denying its occurrence, but you must rest there. The line is shadowed, but nevertheless at length is distinctly visible. For these reasons the question rejected was properly disposed of.

Several objections to the admission or rejection of evidence taken on behalf of the defendant appear in the case, but they relate chiefly to the fact that the defendant had contributed more than the other owners to the expenses of maintaining the farm, and, aside from their irrelevancy as to the defense of the counter-claim, some of them are objectionable because they involve a transaction with the intestate. It might be assumed, for example, that the defendant was expected to pay the interest on the mortgages, and that he was relied upon to do so; that the pressure upon him to do it was imperative; nevertheless the agreement to purchase covered all this, and made it immaterial. All these elements might exist, and such an agreement be made notwithstanding. They are consistent with such a compact, and were present when it was made, as already suggested. What was said at the time the declaration of trust was made in favor of McCandless was properly rejected. If it were said by the deceased, the defendant could not prove it; and if in favor of McCandless, it was, in the view expressed of his relations to the parties, inadmissible for any purpose. The defenses of the statute of frauds and

the counter-claim having been disposed of adversely to the defendant, there was little left of the case to which the exceptions would apply. They were in some sense technical, and perhaps justifiably so, on account of the restriction placed upon the defendant by the Code in reference to his examination. They are unavailable, however. The relations between the intestate and the defendant, as to the Mount Kisco farm, were such that, when the agreement alleged was proven by competent testimony, the only apparent defense was to negative that proof. The other propositions were collateral, and it seems valueless; indeed, in the nature of a confession and avoidance.

The record herein has thus been again examined, and the conclusions arrived at stated; nothing demanding a reversal of the judgment contained in it appears, and it must be affirmed, with costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.